**No. 58497.**—S. B. De Liema *v.* United States, petitions 6971–R, etc. (Los Angeles).

Mollison, Judge:   These are petitions filed under the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties accruing by reason of undervaluation on entry of certain earthenware imported from Holland. The cases have been consolidated for trial and disposition.

It appears that the importer and petitioner in this case had been engaged in Holland for a number of years in the business of purchasing earthenware from a manufacturer named "Staalwarenfabriek Elesva" and selling the same to retail stores; that he migrated to the United States in 1950 and became the sole United States agent of the said manufacturer to import earthenware of a somewhat slightly different style from that which he had been selling in Holland, being designed for the American market.   All of the merchandise here involved was imported and entered during the period from October 1951 to February 1952.

It further appears that the correct values of the imported earthenware became a matter of discussion between the customhouse brokerage firm employed by the petitioner and the examiner in the appraiser's office who passed such merchandise; that some time early in 1952 the examiner requested a pricelist in Dutch florins "representing the freely offered price for home consumption in Holland"; that the importer requested the manufacturer to supply a pricelist, and that he was supplied one by the manufacturer, dated April 1952, showing prices stated in an attached affidavit of one who identified himself as the manager of the "Staalwarenfabriek Elesva" to be "equal to those charged for wholesale dealers in Holland."   According to the evidence, this list was given to the customhouse broker, who transmitted it to the examiner.

The petitioner testified that he was subsequently asked to furnish a pricelist in dollars, and he stated that he obtained one from the manufacturer and turned it over to the customhouse broker to give to the appraiser.   Whether the prices shown in dollars on this latter pricelist were the equivalent of those shown in florins on the first list supplied is not established by the record, but we do not regard this as important, as the merchandise was neither invoiced, entered, nor appraised in dollars.   It is, therefore, mentioned only as evidence of the coopera-

tive effort on the part of the petitioner.    Both pricelists are in evidence as respondent's illustrative Exhibit A.

It appears that the values returned by the appraiser were not based upon either of these pricelists, but upon a third pricelist which the appraiser obtained through the Customs Information Exchange in New York.    It further appears that this third pricelist, which is in evidence as respondent's collective exhibit B, was obtained in the following manner: Petitioner had been importing merchandise such as that here involved through the port of New York.    His customhouse broker there requested that the petitioner furnish a pricelist.    In response to that request, the petitioner asked the manufacturer to send such a pricelist to the customhouse broker in New York, and the pricelist, respondent's collective exhibit B, was sent direct from the manufacturer to the New York customhouse broker, who turned it over to the customs officers there.    Petitioner stated that he never saw respondent's collective exhibit B.

Respondent's collective exhibit B shows prices in Dutch florins, and a comparison between it and the florin prices shown in respondent's illustrative exhibit A shows that the prices in respondent's collective exhibit B are considerably higher. The latter exhibit bears the statement "These are the retail prices for the Dutch market."

The record shows that on or about December 17, 1952, notices, which are before us as petitioner's collective exhibit 1, were sent to the Los Angeles customhouse broker stating that it was contemplated that the merchandise would be appraised at certain values higher than the entered values, and allowing 30 days from December 17, 1952, to amend the entered values to the contemplated appraised values.    Each notice contains this statement:

* * * Unless the entry is amended within THIRTY days from this date it will be assumed that you do not intend to amend and appraisement will be completed.  * * *

The president of the customhouse brokerage firm, which acted for the petitioner in making the entries, testified that, despite the reference to "THIRTY days" in the notices, it was then the practice of the appraiser's office in Los Angeles, inasmuch as the work of that office was behind, to allow much more time than that and not to appraise until subsequent inquiry had been made by the appraiser's office as to the intention with respect to amendment.    Relying on this, his office had used the makeup of amendments of entries as fill-in work, and the amendments of the entries at bar were not made up until the early part of February 1953.

At that time, when his office had prepared the amendments for filing and they first came to his notice, he noted the great discrepancy between the entered and appraised values and called the examiner to ask the basis for the contemplated appraised values.    He was then told that the appraisements had already taken place, and he testified that he registered with the examiner and with the appraiser his surprise and protest against what he considered to be an act inconsistent with the general practice of the appraiser's office.    It being too late to file the amendments, however, they were not completed.

While there is no direct contradiction of the foregoing testimony as to preappraisement practice, it is the testimony of the examiner in the appraiser's office who passed the merchandise involved that it was customary for brokers or importers to request additional time in writing, after the expiration of the 30-day grace period, and that no such written request had been received in connection with the appraisements of the merchandise herein.

It is also the examiner's testimony that there was a lack of cooperation on the part of the petitioner in supplying the pricelists covered by illustrative exhibit A; that he had had to make several requests before they were supplied to him.

Calling attention to the fact that as to at least one item, No. 408 on entry 6308, covered by petition 6974–R, the appraised value exceeded the value declared in the entry by more than 100 percent, counsel for the respondent, in the brief filed in its behalf, contends that the petitioner failed to meet the burden of proof required to rebut the statutory presumption of fraud with respect to the entry in that case, and that the petitions with respect to the other entries were not supported by satisfactory evidence, as called for by section 489, *supra.*

It appears to this court that the burden of a petitioner for the remission of additional duties under section 489, *supra,* is, in fact and in law, no greater in instances where the undervaluation exceeds 100 percent than it is in cases where the undervaluation is 100 percent or less. While it is true that in the former case there is a statutory presumption that the entry of the merchandise was fraudulent which, at least in a legal sense, does not exist in the latter case, nevertheless, it is the burden of the petitioner in both instances to affirmatively establish that entry was made in good faith. This is the affirmative manner of stating the negative burden expressed by the statute, i. e., that entry of the merchandise at less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. See *Kachurin Drug Co.* v. *United States,* 26 C. C. P. A. (Customs) 356, C. A. D. 41, particularly at page 359, and *United States* v. *D. Lisner & Co., Inc.,* 38 C. C. P. A. (Customs) 79, C. A. D. 443, illustrating the burden of proof in both instances.

We, therefore, approach a decision of the issue in this case by examining the record to determine whether it establishes affirmatively that in making the entries herein such good faith was exercised on the part of the petitioner and his agent as is required by the statute. We find that the record warrants us in making such a finding.

As has been said, the importations here involved took place over a period of about 4 months, from October 1951 to February 1952. The record indicates that the merchandise was entered at the invoiced prices because those prices were about the same as the prices the petitioner had paid for similar merchandise when he was doing business at wholesale in Holland. The customs examiner complained that the petitioner or his customs broker failed to cooperate with him by delay in supplying him, the examiner, with pricelists when requested to do so. The record shows, however, that such pricelists were turned over to the examiner on or about April 28, 1952. Inasmuch as the pricelist in florins, part of respondent's illustrative exhibit A, which was the pricelist specifically requested, was sworn to before the American vice consul at Amsterdam, Netherlands, on April 23, 1952, it would seem that the petitioner turned it over to the appraiser just about as soon as it was received in Los Angeles.

This pricelist, which is stated to show the prices "equal to those charged for wholesale dealers in Holland," supports the invoiced and entered values, so that we find that the petitioner's good faith up to this point is demonstrated by (1) the fact that he entered at prices which were familiar to him, by reason of previous dealings at or about the same figures, (2) his cooperation in securing pricelists from the manufacturer, and (3) the fact that those pricelists corroborated the entered values.

The matter apparently remained in that state from April 28, 1952, and December 17, 1952, when, on the basis of information received, as hereinbefore detailed, from the Customs Information Exchange, the appraiser sent notices of contemplated advances. It clearly appears that when the petitioner's customs broker noticed the great difference between the entered and contemplated appraised values his first action was to question the basis of the contemplated advances in

values, and we have no doubt but that, if the appraisements had not already been made, the customs broker, a man of experience in his calling, would have taken steps necessary to protect his client, the petitioner, from the consequences of undervaluation.

It has been demonstrated that insofar as he was directly in contact with the matter of the entry of the merchandise the petitioner's conduct evidenced his good faith, and we have no hesitancy in holding that insofar as the conduct of his agent, his customs broker, was concerned with the entry of the merchandise, good faith was also evidenced. While there is some dispute between the versions of the customs broker and the examiner as to the actual mechanics of the practice in the appraiser's office with respect to the allowance of extension of time after the expiration date of notices, such as those of December 17, 1952, referred to above, there is no dispute that such extensions were customarily allowed.

In relying upon what he evidently honestly believed to be the appraiser's practice, we cannot find carelessness, indifference, or any attitude on the part of the customs broker which would indicate that at that stage of the matter an intent existed on his part, and chargeable to the petitioner, to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise. Certainly, anyone, much less an experienced customhouse broker, who willfully ignored such a notice, would not be demonstrating lack of good faith—he would be demonstrating foolhardiness which could achieve no purpose whatsoever.

To repeat, the record shows the good faith of the petitioner, and whatever acts or omissions of the broker contributed to the undervaluation were under an honest, though possibly mistaken, belief, and are not chargeable to lack of good faith.

We, therefore, find that entry of the merchandise at less value than that returned upon final appraisement was without intention to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

Judgment will, therefore, issue granting the petitions accordingly.